Red Cross there as well. All right, the next case of the morning is number 2320165, Bay Area Unitarian Universalist Church versus Harris County DA, etc. Ms. Taylor. Thank you, Your Honor. Charlotte Taylor on behalf of Plaintiffs Appellants, Bay Area Unitarian Universalist Church and Antidote Coffee. The sole question on this appeal is whether plaintiffs have standing to bring suit. Under multiple precedents of this court and the Supreme Court, they do. Both plaintiffs are currently posting the signs, but for the requirements of sections 3006 and 3007, they would not post the signs in this format. Defendants put the requirements into practice. That is enough to satisfy all three prongs of the standing inquiry. First on injury, plaintiffs are posting the signs now. They are visible to the public every single day. The government-scripted text and appearance of the signs are contrary to plaintiffs' expressive preferences. That is their unrebutted testimony. Compounding the injury is that the scheme is content discriminatory. Property owners who wish to exclude on any other basis, no shirt, no shoes, no service, can post reasonable notice in the form of their choosing. Property owners who wish to exclude licensed handguns are singled out for differential treatment under the scheme. That is injury as long as it is not self-inflicted, and the government coercion here is clear. Property owners can either post the government-scripted signs and have full protection for their right to exclude, or post non-conforming signs and give up that right in part. Who says you're giving up any right? Pardon? Where does the records show that these appellants are giving up any right? So, first, there's the statutory code indicates that it is a crime, a class C misdemeanor with a $200 penalty to enter property ignoring conforming signs, but if the signs are non-conforming, that penalty is removed. There's also— Who said that penalty is removed if there's a non— So, under 3006D and 3007D, the way that the penalties are structured, first, for entering and ignoring notice, there is that $200 penalty in a class C misdemeanor. That's only if the written notice complies with the extensive requirements set out in— But can't the property owner give oral notice to the person? The property owner does have that alternative, but first, there's record testimony indicating that that's burdensome, and it's still a differential sort of set of protections. I don't understand, though, because I don't understand— Well, I think you have to agree that your organizations cannot sue to force law enforcement to penalize people, right? We could not sue to— You can't invoke the obligation of the law enforcement authorities to enforce, right? Under Linda R.S., we could not sue to obtain the prosecution of specified individuals. That's correct. Correct. And so, I'm just wondering, from a practical standpoint, how do you claim non-enforcement when the only way to get enforcement is to pick up the phone and call the police and ask them to remove the person? In other words, the sign is the sign, and even if you did away with that sign, you'd still pick up the phone, call the police, and say, I've got a guy who's open carry here. Please come remove him and do what you will. But I think Your Honor is— So, I'm not sure. I mean, since that's the only way you can invoke law enforcement to maintain your rights, you are making oral requests. So, I think Your Honor is assuming away the deterrent effect that the criminal law has. Under New York Department of Commerce, the Supreme Court held that it is fair to assume that the law will have its predictable effects, and in fact, our argument is even stronger because in the New York case, the Supreme Court assumed that people would violate their legal obligation to answer census questions because of the citizenship question, and here we're assuming that licensed firearm owners are going to follow and observe the criminal law. There's also ample record evidence that they do. For example, there's the one-star Google review that Antidote received where somebody noted that there are 30.06 and 30.07 signs. In another instance, somebody on, I believe, the Texas 30.06 website said, I'll have to go somewhere else for coffee now. So, that's somebody saying they've posted the signs, and therefore, I understand that it would be a trespass to enter the property, and so, there's not going to be, you know, they're not going to be on the property. If I could also go back to the question about Lynda R.S., I think that Judge Ho's opinion in Liffever, which is applying Lynda R.S., makes a very important distinction there, which is crucial to our claims. He says, yes, it is true that under Lynda R.S., you do not have standing to, you don't have an interest in the specific prosecution of a particular individual, but the very core of the Equal Protection Clause, and he and Judge Graves go back and forth on this, but I think fundamentally agree, is that you do have a right to protection on a forward-going basis. Well, and that goes to the evidence here, which is that the lady with the Unitarian Church said she had never been denied police service, that police would come and remove people from the premises. Why is that? I mean, deterrence may be your only read, because non-enforcement is not legitimate. But at that point, there's already been an injury, right? So, what the plaintiffs want is to be able to exclude people at the— It's totally hypothetical whether there's a future injury. I mean, you're just positing a deterrent effect. I don't believe we are just positing a deterrent effect. Again, there's ample record evidence that the members of the public closely track these requirements, the entire purpose— How many of those go to Unitarian churches? So, again, well, with respect to the coffee shop, there's evidence that specific patrons were engaging in discussion of the signage requirements with the owner and members of the staff there. Well, the claim there, though, was, if I read the briefs properly, the claim there was that they were offended that the signage was posted. But that's not what your argument is about. My argument is that, well, let's take the testimony about the person who was told that  that person was deterred from coming in with their firearm. They obviously wanted to have a weapon on the property, so they came back. But they ultimately did conform their conduct to the law. And, again, I would emphasize that under the Department of Commerce case and this court's opinion in the General Land Office case, we can assume that the law will have its predictable effects. So, in the General Land Office case, this court was willing to assume that if the border was closed, there would be, the response to that would be increased unlawful migration and that that would have follow-on harms that it would cause to the state of Texas. And in this case, I think we have an even more developed record. In addition to the evidence showing that members of the public are observing these signage requirements and conforming to them, but also carrying to the maximum amount that the law allows, we also have the ample evidence from the defendant's own records indicating that you have not exercised your right to exclude unless you post conforming signage. There are training materials for Harris County and the city of Houston that map it out very clearly. If you haven't posted a 3006 sign, then you haven't exercised your right to exclude. I think when we— But that absolutely does not translate into the police refusing to enforce on your behalf the cause. It doesn't matter what your sign looks like. You can always pick up the phone and say, I don't like these people coming on with the handguns. But that doesn't—so, two responses to that, Your Honor. Why not? I mean— So, first, I don't think that—the state cannot say, we are going to give gold-plated protection to one class of property owners and only silver-plated protection to another. Well, there's no evidence that there's gold-plated and silver-plated. That's what I'm saying because if you pick up the phone and call them, they have to come and remove that person, don't they? Because you have exercised that other provision of the statute. But that goes to my second point, Your Honor, which is that there's already a complete injury, right? The right to exclude is the very core of property rights. It's a very powerful right in the, you know, in Loretto versus— Again, I mean, so if you see somebody coming on the premises, then one of your baristas or deacons or whatever just walks up to them politely and says, we don't allow guns here. So, there's— Why is that worse than posting a non-conforming sign? Because there's—well, there's uncontradicted testimony in the record by both plaintiffs that they would find that burdensome. On the church's behalf, there's testimony that that's contrary to their religious message of nonviolence and inclusion to have individual confrontations. Well, then you're saying you don't want anything at all because you're also saying that the message you're required to post is burdensome and non-inclusive. So— Correct. Yes, they would like to provide less obtrusive notice in the form of their— That's a little red thing with a gun and some flowers around it. Is that what they want to do? They can do that. If they do that, they will not have exercised their right to exclude at the get-go. I mean, think about—we had a hypothetical in our briefs about picnickers, right? If you have to put up a very, you know, a 10-foot by 10-foot sign, you have a beautiful front lawn, everybody wants to come picnic there. But the Texas Trespass Code says you can't exclude picnickers without a 10-foot by 10-foot sign. So you think, that's an ugly sign, I don't want to put it up. You put up a little sign, people know that they can come and have a picnic on your beautiful front lawn. And sure, then you can call the police and say, please come remove these picnickers. But they've already had a picnic on your front lawn, and that is a trespass under the Supreme Court's precedence protecting the right to exclude as the core right in the bundle of sticks. Well, I can't tell whether you're—what's the problem if your—Judge Warline described it as an aesthetic disagreement with the sign. So, there are numerous First Amendment cases— Because you do not disagree with any single word of the content, do you? Correct. But there are multiple Supreme Court cases holding that you have a right not only to express the message that you choose, but also to express it in the manner of your choosing. So, if the government is telling you—I mean, imagine, for example, we have a, you know, if you had to say that, you know, recite—you wanted to exclude dogs, and in order to exclude dogs, you had to say, you know, a lengthy thing, you know, I think that cats are better than dogs, and I really have, you know, profound objections to dogs, and therefore—and you may still want to exclude the dogs, but you don't want to go through that script. But what this statute requires, and it's bilingual, which as you very well know is very important in Houston, it just states what the law says. But they are very— It's illegal to state what the law says. So, it is—the signs are very large. The testimony for Antidote is that it's over 10 feet of square footage. I've never seen—I've seen a lot of those signs, and I've never seen one of them that was 10 feet. But the combined—because of all the signage, so that's the 3006 and 3007 signs on two separate entrances because they have to be posted at multiple different entrances. They don't have to be posted at all. They do have to be posted if the property owner— The church I attend doesn't post those. I'm sorry? The church I attend does not post those. And that means that they are not exercising their right to exclude firearms in the first instance. And imagine—I mean, tragically, there are— To the contrary. Well, tragically, there are—they may be— They don't consider it a First Amendment abridgment if they have to walk up to somebody and exclude—they walk up to people who have backpacks. Well, so they may not feel that that's a burden on their expressive rights, but I don't think that there's been any argument that—any evidence or argument contradicting the testimony that both of the plaintiffs gave here, that the oral notice requirement is very burdensome. And again, it goes back to the gold-plated, silver-plated point, which is that it's fine. The court couldn't say, like, well, when women call 911, if they want emergency services, they have to recite the Pledge of Allegiance. The state also couldn't say, when you call 911, if you recite the Pledge of Allegiance, we'll send the fastest ambulance with the best medical techs who have 10 years of experience. And if you don't recite the Pledge of Allegiance, we'll still send an ambulance, but it'll have the rookie trainees and less equipment. But see, this is where I just don't understand this. I can understand where, aesthetically, you might think the notices are too big. What I can't understand is the extra step that says, and therefore, we're getting differential treatment. You can't—that's not cognizable. Because you're not getting differential treatment. We are treated differently under the law because we have to provide this notice in order to exercise our right to exclude. And again, this is an unconstitutional conditions case, right? So we are injured if we are coerced. So if the government—if we go back to the picnicking hypothetical, right? If you wanted to exclude picnickers and the government said, well, you can't do it unless you post this 10-foot by 10-foot sign, I think that any property owner would understand that they are feeling pressure ex ante to post that sign. It's not just an idiosyncratic voluntary choice. It's contrary to their choice because if they don't post it, they forgo the deterrent effect that we can presume—and we don't have to presume. There's evidence in the record. But again, under the General Land Office case and the New York Department of Commerce cases, we can assume that the law is going to have its anticipated effect. There—we cite numerous Supreme Court cases addressing the deterrent effect of the criminal law as something that—you know, that's the whole design. If—the whole point of having—the reason why the Texas legislature enacted Section 3005 in the first place was that it wanted to protect property owners' right to exclude and back it with criminal sanctions. And now there's a differential set of notice requirements on one subset of property owners. Okay. You have time for rebuttal. Mr. Hightower? May it please the Court. There are two fallacies or two false legal arguments at the heart of the appellate's argument to this Court. And to better understand why they're false, I'd like to step back and put the state of Texas law in context. Open—concealed carry of licensed firearms has been the law in the state of Texas for more than 25 years, as enacted by the Texas legislature. Likewise, licensed open carry of firearms has been a law enacted by the state of—by the state legislature for almost 10 years. This is the status quo. It is the default in the state of Texas. And if a property owner wants to change that, they may, but they must opt out of the default, which is licensed concealed carry or perhaps open carry. But even longer than the history of concealed and open carry of firearms is Texas law's tradition of protecting a private property owner's interest over the conduct of individuals on their property. And there's a long common law tradition that relates to trespassers, the removal of trespassers, whenever a guest on a private property owner's property does not follow the interest of the property owner. And in fact, as Judge Jones observed, a private property owner can reach out to law enforcement entities if they have a disagreeable guest who is not following the instructions of the property owner. And in fact, the Texas Criminal Code of Procedure requires a peace officer to arrest or detain an individual if they see them in a breach of the peace. And so this is an opportunity protected by Texas law. So now, on top of this, we now have this criminal trespass statute. And it's worth remembering that this is part of the penal code that is established to create a criminal offense against a trespasser in certain circumstances described by the statute. And the specifics of notice, either oral notice or written notice, serve an important function of due process notice, because we're talking about the possible arrest, detention, prosecution of someone. It's important that they have some kind of notice. In fact, there is an affirmative defense within both sections that have been cited within the penal code wherein a gun-possessing gun owner, they come onto the property and discover that, in fact, the private property owner does not allow handguns. If they then leave, they cannot be prosecuted. So with these points in mind, the first fallacy that we come upon is that there is no Hobson's choice here. Throughout their argument and their briefing and before this court, appellants create this false idea that they have two choices. They can either put up these signs that they don't like. They can conform with sections 30.06, 30.07. Or they just have to allow the gun owners in. And as I've already explained to you, that's not at all the case. There is a third option that they seem unwilling to consider, and that is they can exercise their common law rights as a private property owner. They can put up whatever sign they like. And then if the person, if the gun owner decides not to honor that, they can reach out to law enforcement to help them enforce that. There is no allegation in this case that says that they have attempted this and been denied by Chief Finner, the Houston Police Department, by Chief Bacon, the City of Webster's Police Department, by Sheriff Gonzalez in the Harris County Sheriff's Office, or District Attorney Ott. This went to summary judgment, did it not? No, Your Honor. Actually, this is an important distinction because the cases for Chief Finner and the Harris County defendants were both done on the pleadings. So in her prior argument, appellants counsel referenced a lot of evidence that would not at all relate to those claims because those were both decided on the pleadings. Now, in the case of Chief Bacon— How do you respond to opposing counsel's argument that at that point the injury has already occurred because they have a right to exclude? What is the response? There's no injury there, Your Honor. And it's quite clear because they have a right to exclude. And that's the thing that they seem to want to ignore is that the common law allows a private property owner to exclude anyone for any reason from their property. In this case, if they don't like the fact that somebody's bringing a handgun on their property, they can put up any sign they want. And even citing their own evidence, they've trained their staff to call 911 if there's a difficult situation that needs to be resolved. There was evidence in response to Chief Bacon's 12B1 motion. The church administrator said that they have on multiple occasions called the Webster Police Department. They get a response, I think on average about a nine-minute response. Chief Bacon said in his deposition he would have no problem with his police officers responding to a call like that. So there is no injury. That's the fundamental problem. That's why the appellants do not have standing in this case because they haven't been injured. Are you saying that the law enforcement officers don't have to worry about 306, 307? I think it's not so much, Your Honor, that they don't have to worry about it. They're two different remedies. It's a question of simply coming onto their property and removing a noncompliant gun owner and removing them, or putting them in the car, taking them downtown, and perhaps having them be charged with a criminal offense. Those are the two differences there. But in either case, law enforcement officials can provide support for a property owner to deal with a noncompliant— From the property, it's just a matter of what will happen to them after they're removed. Exactly, Your Honor. And that comes to the second fallacy, and that is this idea that it's important that they have the prosecutorial element of the penal code. Because in the injury analysis, one of the things that's critical to First Amendment, and you see this in all of the First Amendment cases, is whether or not the infringing statute can be enforced against the plaintiff. Again, this is a penal code statute established to create a criminal offense against trespassers. It could never be enforced against the property owner. That just doesn't make any sense. And if you look at all of the cases decided by this case, by this court, as well as the Supreme Court, and 303 created from last summer, that involved the developer of websites who was very concerned about prosecution under the Colorado State Public Accommodations statute. In that case, she would have been prosecuted if she did not create websites for people with whose ideas she did not agree. In this case, this court's decision in Book People versus Wong, where publishers of school books complained about a regulation that said that if they didn't monitor the content and create a rating system, monitor that rating system, updating it, that decisions would be made wherein they wouldn't be allowed to sell school books to school districts. I'm sorry. Let me ask you, I misspoke saying summary judgment. Am I not correct that technically the district court dismissed Finner on 12C on the pleadings? That is correct, Your Honor. And then the other Harris County defendants and Webster on a 12B1 with evidence? I believe that the Harris County, Chief Bacon, Webster, was 12B1. Yeah, 12B1. But the Harris County defendants, Sheriff Gonzalez and District Attorney Ogg, were also both on a 12C motion judgment on the pleadings. Okay. Well, let me, the other question, her other argument about standing is that this is a question of they're being forced to post these posters in order to deter on the theory that there's a certain number of renegade gun owners who are going, like the people in wheelchairs used to do, who are going to deliberately come to these premises with their concealed or open carry just to say, ha ha, we can do this because you don't have the signs, deterrent. So do the signs, have you addressed whether there's some injury from the inherent deterrent quality of the signs? I think that the signs, Your Honor, solve, or the language specified in the statute, solve this problem because if you look at the language there, first of all, it's very neutral language. But it also cites to both the sections of the criminal code as well, that creates the criminal trespass statute, as well as the government code that creates the either open carry or concealed handgun license. So it's not just a, while property owners have, certainly have the right to say, no in the criminal trespass statute, does give an extra layer of legal support to demonstrate why it would be a criminal offense to continue. You were going to expound on would they either compare or contrast this case to Wong. Could you finish the question? Okay. Well, in Wong, again, the issue was a group of publishers, book publishers and book distributors. And in that case, there were regulations imposed by the state of Texas that said if you want to continue to sell books to school districts, you must create a rating system that talks about the type of content of these books. You must continue to monitor it and update it. And if not, the book sellers and the book distributors face the very real consequence of no longer being permitted to sell books. Again, we don't have this here because the criminal trespass statute under the penal code will never be enforced against a property owner of any kind. That's simply not how the statute works. They're trying to glean on this third party status that doesn't exist. Another example would be an opinion written by Judge Jones in Speech First versus Fenway that involved conduct codes, speech codes at the University of Texas. Here again, if you have students at the University of Texas who wanted to have debate societies, issue discussion societies, they had a very real concern that if they said something that went against these speech codes, they could be disciplined under the rules of the university. That was a very real threat to them. And as I said before, that simply isn't the case here. It's interesting that because, as the court has already observed . . . Wind it up. You're on the red light. Oh, I apologize. My fault for not mentioning that. For these reasons, we would say that, in fact, the plaintiffs, the appellants have failed to demonstrate standing, and therefore, the district court's opinion should be affirmed. All right. Thank you. Mr. Kusama. May it please the Court? I'd like to conclude by highlighting a few key issues about the case. First, I'd like to discuss ripeness. It's important to remember that this case is entirely rooted in hypothetical facts. The claim is not ripe if it's contingent upon future events that may not occur as anticipated or may not occur at all. Appellants' alleged injuries are based upon the actions, the possible actions of police officers and prosecutors, what they may or may not do. And the hypothetical that has not occurred, a licensed gun owner enters the appellant's business, and the appellants react by contacting law enforcement. And it's hypothetical. The 30.06 and 30.07 signs are not posted. And as a direct result, law enforcement refuses to reply, I'm sorry, to respond and offer assistance to the appellants due to their failure to post the signs. This hypothetical has not occurred. It's never been alleged that this has occurred, and actually, the record reflects that when called upon, law enforcement has reacted. There's been an issue here where we conflate police protections with arrests, and that is very much incorrect. Police protections can be had without arrests, as you all have discussed previously. And this leads to our next issue of the deterrent effect. Appellants' arguments relies upon the loss of alleged deterrent effects. Appellants argue that they are forced to forego benefits of the deterrent effect of prosecution. However, they also acknowledge that citizens do not have a right to prosecution of third parties. This means that a victim cannot claim standing on whether other individuals, including their perpetrators, are investigated or prosecuted. They also say that they're entitled to the benefit of third prosecution, though they're not entitled to prosecution itself, and speculate that in the absence of this third prosecution, they are rather the deterrent effect of trespass law. This argument is naturally logical, as you cannot argue that you are entitled to a specific benefit, yet you're not entitled to the specific act. And furthermore, this case, when it boils down to it, is entirely about the prosecution of 30.06 and 30.07. To say that this has nothing to do or this is not related to the right to prosecution is incoherent with the remaining of the argument. As previously stated, it's also important to note that 30.06 and 30.07 are criminal statutes meant to provide fair notice to gun owners regarding the limitations of their Second Amendment rights. The plaintiffs, excuse me, the appellants aren't actually limited as to what they can say. They can add any signage that they want. They're not regulated by the statute. The statute doesn't require that they post any signs. They're free to post as many pictures or however way they wish to communicate this issue to the public. The only thing that's being regulated here is criminal prosecution. That is the only difference. But even that's not regulated because if the gun owner voluntarily leaves the premises, he's not violating the law. Yes. The only impact of these statutes is the fair notice to gun owners. Ultimately, it doesn't truly benefit or work against the appellants because you're still free to exclude folks off of your property. The only question here is the ability of the state to prosecute trespassers for failing to abide by these signs. Again, there's been a conflation that there's no right to exclude. There's absolutely a right to exclude. The state is not compelling the appellants to act in a specific way in order for their right to exclude to survive. The only issue here is in order for the state to proceed and prosecute trespassers, these are the things that must be proved. Whether they decide to abide by the restrictions, I'm sorry, the regulations is completely up to them. But let me . . . Well, suppose you didn't. Suppose instead of this big notice, you just had, as I said, a red circle and a gun and a strike through it, no guns. And somebody comes on with a concealed weapon or an open carry, and you call the cops, say I want that person removed, and the person refuses to leave. He could still be prosecuted, right? Because you then had an oral request for his release. Yes. Yes, he could still be prosecuted because an oral request was made. Right. Even if the oral request isn't made somehow, the police protections are still available as the police will still show and still ask for . . . and still remove the patron from the property. There is no question here that police protections are still available. Police protections do not equal arrest. And that's repeatedly a conflated issue here. And finally, to kind of wrap up things, the appellant's argument requires three parts. The constitutional right, force of the exchange for a benefit, which the appellants are entitled to. There is no action or threatened action against the appellant's right to free speech. They're not compelled to post a sign that the statute does not require them to act in any way. And ultimately, appellants are not, as they acknowledge, they are not entitled to prosecution. And naturally, the hypothetical deterrence that may result from prosecution. If any one of these three issues, if they fail in any one of these three parts, then their argument fails as well. And we would argue that they failed on all three parts. There is no compelled speech. There is no force of exchange by the government. And there is no benefit, which the appellants are entitled to here. Therefore, we ask that this court follow previous precedent and avoid expansion of standing and write this doctrine and that this court affirm the district court's decision. All righty. Thank you very much. Ms. Taylor. A few points, Your Honor. First, on the standard of review, I think that this court, for all three defendants, has to account for the record because Webster did file a 12B1 motion on the evidence in the record. Harris County filed what they styled a 12C motion, but it went solely to jurisdiction. So the district court, the right thing to do is convert it to 12B1 and then consider the record evidence that we put forward in response to it. And with respect to the City of Houston, because the motion to amend was denied on futility grounds, the proposed amended complaint contained all of the record evidence that we are relying on. So in order to affirm the court's futility ruling, this court would have to decide that even construing all possible inferences in our favor, it would have been futile to amend the complaint that contained the record evidence. Well, I do have . . . you don't construe all the inferences in your favor on a 12B1 where evidence was submitted? Correct. Okay. But you're saying the inferences have to be drawn in regard to the amended complaint? Correct, yes. And at what point in the litigation was the amended complaint filed? The amended complaint was filed . . . the way that this unfolded was the . . . Houston filed its 12C motion before discovery. Then all discovery was completed by the beginning of September 2022. Then on September 29th, the district court ruled on the 12C motion on the pleadings, dismissing those claims without prejudice. So we would have had the option of filing a brand new action if we had wanted, but we thought it made more sense to seek to amend. So at that point, we reached out to the other side and said, we would like to amend and try to negotiate a schedule that put off the dispositive motions deadline in order to have orderly process on the motion to amend. But it was, I believe, October 18th when they finally told us that they were not going to agree to any kind of abeyance of the dispositive motions. So then we did file our motion to amend and our dispositive motions on October 31st and November 1st. But that was a year after the discovery cutoff date, right? No, it was two months after the discovery cutoff. Two months after, but it was also on the eve of when, what, some other deadline, right? Well, I mean, again, the reason why . . . we would have had no reason to believe that the judge was going to reverse its prior ruling . . . the district court was going to reverse its prior ruling on standing and seek to amend at that point. So it was only when we got the ruling on Houston's 12C motion on September 29th, I believe, 2022, that we were on notice that it was time to seek to amend. And again, we could have just filed a new complaint against Houston, but we didn't want to put any of the defendants to the burden of a separate proceeding with new discovery. A couple of other points. My friend on the other side conceded that there is, in fact, different treatment for depending on whether you post conforming signs. He said, if you don't post conforming signs, you have the protections only of the common law, and if you do, then they can put the trespasser in the car and take him downtown. Now that is differential treatment, and we have to assume that if there are different penalties . . . He also said the right to exclude is not impacted, because in either instance, the person will be removed from your property. Well, and we disagree with that, because the person has already come onto our property. Again, the right to exclude is a very powerful property right, and if people are coming onto our property who we don't want there, that is a violation of our . . . that is an infringement of our property right, and whether or not they later get ejected, we still have suffered a deprivation of the right to exclude. To go to the enforcement, they keep returning to this idea that we don't have standing because these are not enforced against us the way a campus speech code is. There are certainly a lot of cases, including the Susan B. Anthony case, that talk about pre-enforcement standing, but this is just not that case. This case is about the application of a standard by government actors who decide to what extent we enjoy a benefit. It's like Bennett v. Speer. It's like KP v. LeBlanc. It's like Arivak v. Texas, where there was no enforcement. In fact, in Arivak, Judge Sparks had ruled that there had to be enforcement of that kind in order for the case to go forward. That was under Ex parte Young, but this court held on standing and Ex parte Young grounds that there was no requirement that there be that type of criminal enforcement. One other point, because your red light has been on. According to the Supreme Court, injury has to be actual, real, certainly impending. What's your best evidence of that? If we allowed you, I take it there isn't really anything except speculation, apart from your amended complaints. What's your best evidence of that? Our injury is actual because we are currently posting the signs. The only way that that is not a cognizable injury, this is where they go to Clapper, for example, is if we're just idiosyncratically posting the signs based on speculation about something that might happen if we don't. Again, the Trespass Code makes very clear, if you want to provide notice of your right to exclude, you post the signs. Go back to ... Never mind. Okay. It's an unconstitutional condition, and so once that choice is forced upon you, this is Rumsfeld v. Fair, this is this court's decision in Henderson, that is a complete injury that confers standing at the time that you make your choice. Okay. Thank you.